IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA          )
                                  )  Case No.
                                  )  3:17-cr-00044-2
        v.                        )
                                  )  CHIEF JUDGE CRENSHAW
BENJAMIN ALEXANDER FAULKNER       )
                                  )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BEFORE THE HONORABLE

CHIEF DISTRICT JUDGE WAVERLY D. CRENSHAW, JR.

TRANSCRIPT OF PROCEEDINGS

November 2, 2018

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


APPEARANCES:

        For the Plaintiff:  S. Carran Daughtrey
                            Byron M. Jones
                            719 Church St
                            Suite 300
                            Nashville, TN 37203


        For the Defendant:  Luke A. Evans
                            P O Box 398
                            Murfreesboro, TN 37133-0398




PREPARED BY:
                    LISE S. MATTHEWS, RMR, CRR, CRC
                        Official Court Reporter
                    719 Church Street, Suite 2300
                        Nashville, TN 37203
                    lise_matthews@tnmd.uscourts.gov

1                     **I N D E X**

2                Friday, November 2, 2018

3

4                <u>INDEX OF WITNESSES</u>

5                                        <u>PAGE</u>

6  BENJAMIN ALEXANDER FAULKNER                 5

7  JONATHAN ANDREW HENDRIX                    14

8

9

10

11                                MARKED   RECEIVED   WITH-

12  <u>DEFENDANT'S EXHIBIT</u>           <u>FOR I.D.</u>   <u>IN EVD.</u>   <u>DRAWN</u>

13

14  1      Facts with portions stricken   20       20

15

16

17

18

19

20

21

22

23

24

25

1          The above-styled cause came on to be heard on

2    November 2, 2018, before the Honorable Waverly D.

3    Crenshaw, Jr., Chief District Judge, when the following

4    proceedings were had, to-wit:

5          THE COURT:  All right.  Be seated.

6          Okay.  We're here on Case 17-184, *United States of*

7    *America versus Benjamin Faulkner*.  And Mr. Faulkner is in the

8    courtroom.  If counsel can introduce themselves for the

9    record.

10          MS. DAUGHTREY:  Your Honor, Carrie Daughtrey and

11    Byron Jones for the United States.

12          MR. EVANS:  Your Honor, Luke Evans on behalf of

13    Mr. Faulkner.

14          THE COURT:  Okay.  Mr. Faulkner, I understand you

15    want to enter a guilty plea this morning?

16          THE DEFENDANT:  This is correct.

17          THE COURT:  And you want to enter a guilty plea on

18    three -- Counts One, Two, and Three?

19          THE DEFENDANT:  Correct.

20          THE COURT:  And have you talked to your attorney

21    about that?

22          THE DEFENDANT:  I have.

23          THE COURT:  And asked him questions?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Okay.  Did he answer your questions?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Did you understand his answers?

3          THE DEFENDANT:  I did.

4          THE COURT:  Do you want more time to discuss with

5     him the implications of pleading guilty?

6          THE DEFENDANT:  I think I'm okay.

7          THE COURT:  Okay.  Do you have any complaints

8     about his services on your behalf?

9          THE DEFENDANT:  Actually, none.

10          THE COURT:  All right.  Then I'll ask you -- I

11     understand you have a plea petition.  There is no plea

12     agreement?

13          MR. EVANS:  There is no plea agreement, Your

14     Honor.  He'll be pleading --

15          THE COURT:  If you'll sign that and pass it

16     forward.

17          MR. EVANS:  Yes, Your Honor.

18          THE COURT:  All right.  So Mr. Faulkner, I need to

19     ask you some questions.  So I'm going to ask you and

20     Mr. Evans to come to the podium.

21          So Mr. Faulkner, I need to make a determination

22     that you know what you're doing, you know the implications of

23     what you're doing and you're doing it freely of your own

24     choice.  So that's the focus of my questions.  If you don't

25     understand them, let me know, and I'll try to clarify.  And

1   if you want to talk to your attorney, let me know and I'll
2   accommodate that.  Does that make sense?
3            THE DEFENDANT:  Sounds good.
4            THE COURT:  So to do so I need to place you under
5   oath, and remind you anything you say thereafter could be
6   used against you.
7
8                    BENJAMIN ALEXANDER FAULKNER
9   called as a witness by the Court, was duly sworn and
10  testified as follows:
11
12           THE COURT:  Okay.  What's your full name?
13           THE DEFENDANT:  Benjamin Alexander Faulkner.
14           THE COURT:  And how old are you, Mr. Faulkner?
15           THE DEFENDANT:  How old am I?
16           THE COURT:  Yes.
17           THE DEFENDANT:  27.
18           THE COURT:  How much education were you able to
19  get?
20           THE DEFENDANT:  That's a tough question.  In
21  Canada, it's an advanced diploma and a college diploma.  I'm
22  told that is the equivalent to a master's.  I did have to
23  write a thesis for that.
24           THE COURT:  How about this?  How many years of
25  education have you had wherever you lived?

 1          THE DEFENDANT:  One, two, three, four.

 2          MR. EVANS:  From grade school.

 3          THE DEFENDANT:  Oh, geez.  Four plus K through 12.

 4    19.

 5          THE COURT:  19 years of education?

 6          THE DEFENDANT:  18?  My math is really bad.  Let's

 7    go with 18.

 8          THE COURT:  Okay.  Where were you born?

 9          THE DEFENDANT:  London, Ontario, Canada.

10          THE COURT:  Do you understand that by entering a

11    guilty plea it may impact your ability to remain in the

12    United States?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  So I want to go over the

15    offenses you're offering to plead guilty to, what the

16    government would have to prove at trial, and what the maximum

17    penalty is under the statute.

18          You're offering to plead guilty to Count One,

19    which charges you with engaging in a child exploitation

20    enterprise, in violation of 18 U.S.C., Section 2252(a)(g).

21    And if you went to trial, and we'll talk about what it means

22    to go to trial, the government would have to prove to a jury

23    beyond a reasonable doubt that you advertised or distributed

24    child pornography on three or more separate occasions.  Then

25    they would have to prove, the government would have to prove,

that you committed these offenses in concert with three or
more other persons.  And, finally, the government would have
to prove to a jury beyond a reasonable doubt that the child
pornography advertised or distributed involved more than one
minor child.

And if the government proved that to the jury and
the jury found against you, then under the statute, the
maximum sentence you face is imprisonment of 20 years to
life, a fine of up to $250,000, and supervised release of
five years to life, plus the $100 mandatory special
assessment.

Do you understand the charges in Count One?

THE DEFENDANT:  I do.

THE COURT:  And the penalty under statute?

THE DEFENDANT:  Yes.

THE COURT:  In Count Two you're charged with a
conspiracy to advertise child pornography, in violation of 18
U.S.C., Section 2251(d)(1)(A) and (e).

And in this count the government would have to
prove, if you chose to go to trial, to a jury beyond a
reasonable doubt that two or more persons conspired or agreed
to commit the crime of advertising child pornography, and
that you knowingly and voluntarily joined that conspiracy.
And if the government was able to prove that to a jury and
they found against you, then the maximum sentence under the

statute is imprisonment of 15 to 30 years; a fine up to
$250,000, and supervised release of five to -- five to life;
plus the $100 special assessment.

Any questions about Count Two?

THE DEFENDANT: None at all.

THE COURT: All right. And, finally, in Count
Three, you're charged -- you're charged with a conspiracy to
distribute child -- to distribute child pornography, in
violation of 18 U.S.C., Section 2252(a) and -- (a)(2) and
(b)(1). And in this count the government would have to prove
to a jury that two or more persons conspired or agreed to
commit the crime of distributing child pornography, and that
you knowingly and voluntarily joined that conspiracy. And if
the jury found against you there, you face imprisonment of
five to 20 years, a fine up to $250,000, supervised release
of five years to life, plus the $100 mandatory special
assessment.

Any questions about Count Three?

THE DEFENDANT: No, sir.

THE COURT: Now, you note that -- the Court notes,
rather, and I want you to note, that each one of these
carries what we call a mandatory minimum sentence.

Do you know what that is?

THE DEFENDANT: I do.

THE COURT: So you know that at sentencing we

1   start with that number and go from there -- potentially go
2   from there?
3                   THE DEFENDANT:  Yes.
4                   THE COURT:  Any questions you have about any of
5   the charges?
6                   THE DEFENDANT:  None.
7                   THE COURT:  Okay.  You know you don't have a plea
8   agreement?
9                   THE DEFENDANT:  Yes.
10                  THE COURT:  So you know there's no agreement
11  between you and the government about sentencing, which means
12  that you and your attorney at the sentencing will be able to
13  come in and make whatever arguments and present whatever
14  proof you all -- you think is appropriate.  Likewise, the
15  government can come in and present proof and make whatever
16  arguments the government thinks is appropriate.  Understood?
17                  THE DEFENDANT:  I do.
18                  THE COURT:  So the guideline -- the guideline
19  range is going to be important.  And the guideline range is
20  going to be determined from the guidelines set by the
21  Sentencing Commission.  The presentence report, which we'll
22  talk about later, will calculate something called an offense
23  level, and then your criminal history.  And we'll get two
24  numbers.  We'll go to a chart, and where those two numbers
25  intersect is an advisory range of months that the guidelines

suggest to me you should be sentenced.  But that's only one

factor in the determination of what your sentence should be.

My obligation is to impose a sentence that's unique to you

and appropriate looking at all of the 3553(a) factors, which

I'm sure you and your attorney will talk about.

You and your attorney may have talked about what

the guideline range may be.  You all may have had some

discussions with the government about what the guideline

range may be.  So I just need you to know that whatever

discussions and whatever talk and whatever predictions have

been made about the guideline range are not binding on the

Court.  I'll make the final determination of the guideline

range, I'll tell you what it is, and then I'll apply it at

sentencing.

Any questions about the guideline?

THE DEFENDANT:  I think I understand.

THE COURT:  Have you -- have you had any alcohol

or drugs in the last 24 hours?

THE DEFENDANT:  I have not.

THE COURT:  Are you under any prescription

medications?

THE DEFENDANT:  No.

THE COURT:  Is -- has anyone put any pressure on

you that you need to plead guilty here today?

THE DEFENDANT:  No.

1          THE COURT:  Has anyone threatened you or those

2   close to you that if you don't plead guilty something bad may

3   happen to you or to them?

4          THE DEFENDANT:  No.

5          THE COURT:  Are you telling me, Mr. Faulkner, that

6   you and you alone made the final decision to enter a plea of

7   guilty on these three counts?

8          THE DEFENDANT:  Yes.

9          THE COURT:  After talking to your attorney?

10         THE DEFENDANT:  Yes.

11         THE COURT:  And considering your options?

12         THE DEFENDANT:  Yes.

13         THE COURT:  You've decided this is the best thing

14   for you?

15         THE DEFENDANT:  I have.

16         THE COURT:  Let's talk about the trial rights

17   you're giving up.

18         You know you have the right to go to trial.  And

19   at the trial you will see and hear all the evidence the

20   government presents to the jury.  And at the trial, you,

21   through your attorney, can challenge that evidence, all

22   toward the goal of creating some doubt in the jury's mind

23   about whether you, in fact, are guilty of these three counts

24   or not.  Is that understood?

25         THE DEFENDANT:  It is.

1          THE COURT:  At the trial, you can make -- you

2    would make the decision about whether you want to testify or

3    not.  And if you decided not to testify, I would tell the

4    jury they can't hold that against you, they can't consider

5    it.  They can't even discuss it because you have an absolute

6    right not to testify if you so choose.  Understood?

7          THE DEFENDANT:  I do.

8          THE COURT:  And at the trial, if you are -- if the

9    jury came back adverse to you, found against you at the

10   trial, you would have an absolute right to go to the Court of

11   Appeals.  And you could argue there through your attorney

12   that the jury got it wrong.  You can argue that the Court did

13   something wrong.  You can make whatever argument you like.

14   But if I accept your plea of guilty today, there will be no

15   trial and you will not be able to go to any court and say I'm

16   not guilty of Counts One, Two, and Three.  Understood?

17         THE DEFENDANT:  Yes.

18         THE COURT:  And you delay.  So I'm sensing

19   something I said didn't make sense to you.

20         THE DEFENDANT:  I may have interpreted that as a

21   waiver of appeal rights, but that's not what you said.

22         THE COURT:  Well, it is waiving -- indeed, it is.

23   It is waiving any right to appeal about your guilt.

24         THE DEFENDANT:  Yeah, about the guilt.  Yes.

25         THE COURT:  About the guilt.  You don't have a

1  plea agreement.  So you're right.  You've anticipated
2  correctly, in regards to the sentence, you're not giving up
3  any appeal rights and you would have the right to make
4  those -- make that appeal.  But as it pertains to your trial
5  rights, you understand that you're giving up the right to go
6  to any court and claim you're not guilty of Count One, Two,
7  and Three?
8          THE DEFENDANT:  Yes.
9          THE COURT:  And you understand that that also
10 means you're giving up the right to file pretrial motions, to
11 file motions during the trial, and all the strategy that can
12 be done at a trial, all toward the goal of finding you not
13 guilty on these charges.  In other words, all the things that
14 can happen at a trial that may have been beneficial to you,
15 you're giving all that up because none of that will matter if
16 I accept your guilty plea.
17         THE DEFENDANT:  Yes.
18         THE COURT:  Okay.  Any questions you have about
19 your trial rights or anything we've discussed to this point
20 in time?
21         THE DEFENDANT:  I think Mr. Luke Evans here has
22 informed me rather well.
23         THE COURT:  Okay.
24         Okay.  Well, I now need to hear, Mr. Faulkner, the
25 facts.  Because I don't know what actions the government says

you engaged in or what behavior.  And I understand -- so I'm
going to ask the government to present that.  And you might
want to follow along.  Because as soon as that's done, I'm
going to ask you did you, in fact, engage in the behavior
just described to the Court; did you, in fact, do the things
just described to the Court.  And if you tell me -- if that's
not correct, you need to tell me now because I'm going to
rely upon it both today and at the time of sentencing.
Understood?

THE DEFENDANT:  Understood.

THE COURT:  Any questions?

THE DEFENDANT:  None.

THE COURT:  All right.  You can have a seat.

THE DEFENDANT:  Thank you.

MS. DAUGHTREY:  Your Honor, the United States
would call Homeland Security Investigations Special Agent
John Hendrix.

JONATHAN ANDREW HENDRIX,
called as a witness by Plaintiff, was duly sworn and
testified as follows:

COURT DEPUTY:  Can you please state your full name
and spell your last name.

THE WITNESS:  Yes, ma'am.  My full name is

1  Jonathan Andrew Hendrix, H-e-n-d-r-i-x.

2           May I begin, Your Honor?

3           THE COURT:  Yes.  Go ahead.

4           THE WITNESS:  In 2015, agents with the U.S.

5  Department of Homeland Security, Homeland Security

6  Investigations (HSI) began an investigation into a website,

7  identified hereinafter as "Website A," which was dedicated to

8  the advertisement and distribution of child pornography on

9  the Tor network.  "Website A" had over 1,500 members, many of

10 whom actively posted new content and who engaged in online

11 discussions involving the sexual abuse and exploitation of

12 minors.  The rules of "Website A" required each member to

13 continue to post images of child pornography on "Website A"

14 to maintain access to the website.

15          In late 2016, Defendant Benjamin Faulkner was

16 identified as an administrator of "Website A" using an online

17 name identified hereinafter as "Username 2".  As a website

18 administrator, Faulkner approved users for membership in

19 "Website A" and reviewed and approved posts containing child

20 pornography.  Faulkner and co-administrator Patrick Falte

21 maintained a public key cytography system, which uses pairs

22 of encryption keys - one private and known only to the

23 account owner and one public, which is shared with others -

24 to identify -- to verify the identity of "Website A" members.

25 Forensic analysis of Faulkner's computer devices revealed the

private key that was used to sign and verify many of the
messages posted by "Username 2" on "Website A" and the
private key that was used to sign and verify messages posted
by the administrator account called "Website A" on "Website
A" -- forensic analysis also revealed a list of public PGP
keys for many high ranking members of "Website A".

Forensics analysis of Faulkner's computer devices
further revealed backup data bases of "Website A", which
would allow Faulkner to restore "Website A" if it went down.
The same database file included backup databases for three
other websites on the Tor network also dedicated to the
advertisement and distribution of child pornography.
Faulkner's computer had "Website A" and two other Tor used
child pornography websites bookmarked in his Tor browser.

Faulkner used an encrypted messaging service to
communicate with members of "Website A".  Forensics analysis
of Faulkner's computer devices revealed a database file for
the messaging service which included thousands of images --
I'm sorry -- thousands of messages Faulkner had with Falte
and other members of "Website A".

Faulkner advertised and distributed child
pornography on "Website A".  His profile page on "Website A"
indicated that he preferred girls ages 2 to 12.  He posted
the following links to images and videos depicting child
promography on "Website A".

1           On or about September 15th, 2015, Faulkner posted
2    a link to a video, along with preview images, depicting a
3    female child appearing to be four to five years old being
4    vaginally penetrated by an adult male penis.  On or about
5    September 30th, 2015, Faulkner posted in the Babies &
6    Toddlers forum a link to a series of photos, along with
7    preview images, depicting a female child who appears to be
8    four to five years old being vaginally penetrated by an adult
9    male penis and an adult male hand and with what appears to be
10   semen on her vaginal area and stomach.  Along with the post,
11   Faulkner commented that the photos came from a user who was a
12   producer on another Tor network-based website that also was
13   dedicated to child pornography.  Another user confirmed this
14   information was correct and noted that he had videos of the
15   same girl somewhere.  Faulkner replied that he would be
16   extremely grateful if the user could find the videos.

17           On or about March 27th, 2016, Faulkner posted,
18   again in the Babies & Toddlers forum, a link to a series of
19   photos depicting girls identified in the preview images as 10
20   different girls ranging from two to six years old.  The
21   images depicted the girls engaging in lascivious exhibition
22   and being orally, vaginally, and anally penetrated by adult
23   male penises.  Faulkner stated in the post that he had been
24   collecting these images for a few years and was posting his
25   entire sorted collection.

1    The two -- on two occasions between fall 2015 and

2  October 1st, 2016, Faulkner, along with Patrick Falte,

3  traveled to meet another "Website A" member.  On those

4  occasions, Faulkner sexually abused the daughter of this

5  "Website A" member, who was three years old at the time of

6  the first incident of abuse.  Depictions of this minor

7  engaging in sexually explicit conduct were posted to "Website

8  A".

9    Faulkner acted in concert with co-defendants

10  Patrick Dane Falte, Andrew Ryan Leslie, Brett Allen Bedusek,

11  and with other members of "Website A" as part of a series of

12  felony violations of Title 18, United States Code, Sections

13  2251(d)(1)(A) and 2252(a)(2), prohibiting the advertisement

14  and distribution of child pornography, constituting three or

15  more separate incidents and involving more than one minor

16  victim, and thereby knowingly engaged in a child exploitation

17  enterprise.

18    Thank you, Your Honor.

19    THE COURT:  All right.  Any questions, Mr. Evans?

20    MR. EVANS:  Your Honor, I don't have any questions

21  for the agent.

22    I do, on behalf of Mr. Faulkner, have an objection

23  to portions of the facts that were read.

24    THE COURT:  Okay.  Go ahead.

25    MR. EVANS:  And I have a -- I've -- a copy of that

1  factual recitation that I have went over with my client and

2  stricken the portions that he objects to.  And I would like

3  to submit that as Exhibit 1, Defense Exhibit 1, to the

4  hearing today for Your Honor.

5          THE COURT:  All right.  And so the record's clear

6  do you want to just go through those?

7          MR. EVANS:  Sure.  Absolutely.

8          If Your Honor please, I'll be referring to page 1

9  of the factual basis, paragraph 1, the last sentence in that

10 paragraph.  And my client would object to this sentence that

11 reads:

12          The rules of "Website A" required each member to

13 continue to post images of child pornography on "Website A"

14 to maintain access to the website.

15          Then referencing paragraph 3, would be the second

16 sentence on page 2, paragraph 3, that reads:

17          The same database file included backup databases

18 for three other websites on the Tor network also dedicated to

19 the advertisement and distribution of child pornography.

20          THE COURT:  Okay.

21          MR. EVANS:  Moving to paragraph 5, would be the

22 second sentence, page 2, paragraph 5, that reads:

23          His profile page on "Website A" indicated that he

24 prefers girls ages two to 12.

25          And finally, page 3, paragraph 6.  We would move

```
 1  to -- or would object, rather, to strike that -- the entire
 2  paragraph 6 -- or object to the -- the entry of paragraph 6
 3  as a factual basis for the plea here today.
 4              THE COURT:  All right.  I think the record's
 5  clear.
 6              Thank you.
 7              MR. EVANS:  And I'll pass forward the actual
 8  document, Your Honor.
 9              And I will state to the Court I have provided the
10  Court with a courtesy copy.
11              THE COURT:  I got it.
12              MR. EVANS:  That is a little different than the --
13  what has been submitted.  The government provided a last
14  minute change.  And so I went along with their last minute
15  one and updated the exhibit.
16              (Whereupon Defendant's Exhibit 1 was marked for
17              identification and received in evidence.)
18              THE COURT:  All right.
19              Okay.  With those -- well, let's go ahead.
20              Mr. Faulkner, if you'll come back to the podium.
21              You heard the clarification provided by your
22  attorney and what was -- and the information provided to the
23  Court.
24              Is the -- are the actions that were just described
25  to the Court true and correct?
```

1          THE DEFENDANT:  With the amendments that Luke here
2    has made, they are.

3          THE COURT:  And did you, in fact, engage in the
4    behavior described to the Court?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And, in particular, did you -- did you
7    engage in the behavior that was outlined on September 14, 30,
8    and March the 27th -- I'm sorry.  September 14 and 30 of 2015
9    and March the 27th of 2016?

10          THE DEFENDANT:  I'm not -- I'm not 100 percent on
11    the particular dates, but yes.  If those dates are accurate,
12    I'm not sure.

13          THE COURT:  On or about those dates.

14          THE DEFENDANT:  On or about, yes.

15          THE COURT:  And with the clarifications provide by
16    your attorney, all the other information that's been provided
17    to the Court is true and correct?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  Mr. Faulkner, let me ask
20    you again, do you understand that by entering a guilty plea
21    on these three counts and my acceptance of your guilty plea
22    there will be no trial and you're giving up forever the right
23    to a trial and the other constitutional and appellate rights
24    that we have discussed?

25          THE DEFENDANT:  Yes.

1          THE COURT:  And again, do you understand that by

2   pleading guilty, aside from appealing your sentence, you

3   cannot later come to any court and claim that you're not

4   guilty or that your rights have been violated?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Having heard from me what your rights

7   are and what may occur if you plead guilty, do you still want

8   to give up your right to a trial and plead guilty?

9          THE DEFENDANT:  I do.

10          THE COURT:  Mr. Faulkner, how do you plead on

11   Counts One, Two and Three?

12          THE DEFENDANT:  Guilty.

13          THE COURT:  On each count?

14          THE DEFENDANT:  On each count.

15          THE COURT:  And are you pleading guilty on each

16   count because you, in fact, engaged in that criminal

17   behavior?

18          THE DEFENDANT:  I am.

19          THE COURT:  I've observed the appearance of

20   Mr. Faulkner and his responsiveness to the questions asked.

21   I think he's in full possession of his faculties and

22   competent to plead guilty.  He's not under the apparent

23   influence of any drugs, alcohol or prescription medication.

24   He understands the nature of the charge, the maximum possible

25   penalty and any mandatory minimum penalty.  He's waived his

1 Constitutional right to trial and the Constitutional rights
2 accorded all persons accused of a crime. He's aware that he
3 has no plea agreement. And he's offered to plead guilty
4 knowingly, intelligently, and voluntarily. I find there's a
5 factual basis for the plea. The plea of guilty is hereby
6 accepted. And, Mr. Faulkner, you're now adjudged guilty of
7 Counts One, Two and Three.
8            So the next step is to prepare a presentence
9 report. Have you and Mr. Evans talked about the presentence
10 report?
11           THE DEFENDANT: We have.
12           THE COURT: So you know that that's -- that's a
13 document that the Court will -- that you'll see and the
14 government will see. You'll get a chance to make changes to
15 it. It's a very important document to the Court because
16 that's the information -- additional information I'll have
17 about you that will help me apply all the sentencing factors
18 to determine what's an appropriate sentence. So you'll meet
19 with the pretrial -- probation pretrial services officer, get
20 information. Your attorney will be with you. And you'll get
21 a draft copy of the presentence report. You can suggest
22 changes. The government will also be able to suggest
23 changes. And if you all can't agree on the changes, then
24 I'll resolve that at the sentencing and go from there.
25           Any questions about the presentence report?

1          THE DEFENDANT:  None.

2          THE COURT:  So we need to set a sentencing date.

3    It generally takes probation about 90 days to do this and get

4    it circulated to you.  The end of January is going to be

5    cutting it pretty close, if it will be ready by then.

6          PROBATION:  I'm not sure, Your Honor.

7          THE COURT:  And, Mr. Faulkner, I'm totally

8    committed in another case for the entire month of March and

9    the entire month of April.

10          THE DEFENDANT:  I don't mind waiting.

11          THE COURT:  Okay.  How about May the 10th?

12          MR. EVANS:  That day is fine with me, Your Honor.

13          THE COURT:  How about May the 10th at 10:00?  Does

14   that work for the government?

15          MS. DAUGHTREY:  Yes, Your Honor.  Thank you.

16          THE COURT:  Does 10:00 work, Mr. --

17          MR. EVANS:  Yes, Your Honor.  Absolutely.

18          THE COURT:  All right.  So Mr. Faulkner, I'm going

19   to set the sentencing for May the 10th at 10:00, and I'm

20   going to enter an order to that effect.  I'm also going to

21   sign the order accepting your guilty plea.

22          Do you have any questions about anything that

23   we've discussed?

24          THE DEFENDANT:  I do not.

25          THE COURT:  Do you have any questions about what's

```
 1   going to happen after today?
 2              THE DEFENDANT:  I don't believe so.
 3              THE COURT:  All right.  Thank you.
 4              THE DEFENDANT:  Thank you.
 5              MR. EVANS:  Thank you, Your Honor.
 6              (Court adjourned.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1  REPORTER'S CERTIFICATE

2

3          I, Lise S. Matthews, Official Court Reporter for

4  the United States District Court for the Middle District of

5  Tennessee, with offices at Nashville, do hereby certify:

6          That I reported on the Stenograph machine the

7  proceedings held in open court on November 2, 2018, in the

8  matter of UNITED STATES OF AMERICA v. BENJAMIN ALEXANDER

9  FAULKNER, Case No. 3:17-cr-00044-2; that said proceedings in

10  connection with the hearing were reduced to typewritten form

11  by me; and that the foregoing transcript (pages 1 through 25)

12  is a true and accurate record of said proceedings.

13          This the 6th day of May, 2024.

14

15                              /s/ Lise S. Matthews
                                LISE S. MATTHEWS, RMR, CRR, CRC
16                              Official Court Reporter

17

18

19

20

21

22

23

24

25